## THE GUADELOUPE.

(District Court, S. D. New York. March 13, 1899.)

1. SHIPPING—DAMAGE TO CARGO—SEAWORTHINESS.

The beams of the main hatch of a vessel had been cracked some time previous to a voyage, and on the discharge of her cargo, at the end of the voyage, were found to be in worse condition and her deck to have sunk in consequence. *Held*, that such fact, where the vessel encountered a hurricane during the voyage, which would account for her condition at its end, did not overcome the presumption of her seaworthiness when she sailed, arising from the fact that the beams had been repaired and strengthened, and that her classification had been kept up thereafter on repeated surveys, and had not expired.

2. SAME—MANAGEMENT OF SHIP—REPAIRS IN PORT OF DISTRESS.

When a ship is obliged, during a voyage, to put into a foreign port for repairs, owing to injuries received in a storm, an error of judgment of the master, as to the extent of repairs necessary, where he exercises diligence and care, and acts in good faith, pertains to the management of the ship, within section 3 of the Harter act (2 Supp. Rev. St. p. 81), and does not render the owners liable for an injury to the cargo which might have been prevented had more extensive repairs been made.

In Admiralty. Damage to cargo. Sea perils.

Cowen, Wing, Putnam & Burlingham, for libelants.

Benedict & Benedict, for claimant.

BROWN, District Judge. On the 31st day of March, 1898, the French schooner La Guadeloupe, being then at Santos, Brazil, was chartered to E. Johnston & Co. for the carriage of a cargo of coffee to New York. She was loaded by the charterers and left Santos on May 4, 1898. Shortly after, she met with a pampero, or hurricane, in which she lost her anchors, damaged her windlass, and was subjected to considerable strain, whereupon she returned to Santos for repairs. After an official survey there, and the making of all such repairs as were deemed necessary, she again sailed on the 31st day of May, and arrived in New York on the 13th of August. Upon discharging, considerable of the coffee was found damaged by sea water, to recover which damage the above libel was filed.

1. The libel charges unseaworthiness on sailing from Santos, and bad stowage. The evidence shows that two beams of the main hatch had been cracked at some time previous to this voyage, and that under the direction of the Bureau Veritas repairs had been made and the beams strengthened by nailing slabs or planks across the cracks in or prior to December, 1896. Her classification had been kept up on repeated surveys, and had not expired at the time this voyage was made. I am of opinion that the evidence offered is sufficient to afford presumptive evidence of seaworthiness at the time the vessel first sailed from Santos, and that the extraordinary weather she soon after experienced, together with her subsequent voyage, is sufficient to account for the widening and increase of the cracks in the beams, and for the sinking of the deck, as they were found to exist after her discharge in New York.

2. The evidence does not show any established custom requiring in the 'tween-decks of a ship like this any wooden dunnage between the matting and the ceiling. The mode of stowage used in this vessel seems upon the evidence to have been equally common, and to be regarded as good and sufficient stowage.

It was doubtless the duty of the master to use diligence in making all necessary repairs at Santos to put the ship in a seaworthy condition, and for that purpose to make such surveys as were apparently needed in order to determine what repairs were necessary. This obligation, however, was not a warranty, but a duty to use due diligence only. An official survey as I have said was made, and everything was done by the master that was recommended. But the question whether the cargo should be removed, and to what extent, for the purpose of examining the interior of the ship, thereby incurring certain considerable expense, was a question for the exercise of the master's judgment. There is nothing to indicate that he did not act fairly and in good faith; he consulted, as was proper, with the agent of the underwriters representing to a large extent the cargo interests, and they opposed any opening of the hatches, as no leak had yet been disclosed. If any error was committed in this respect, I think it was an error of judgment. It was an error, moreover, pertaining to the "management" of the ship; since the question arose after the voyage had commenced, at a port of distress, far from the home port, and away from any supervision by the owners, and was wholly subject to the master's determination.

In procuring the survey and doing the repairs, as the master acted with due and reasonable care and diligence, the case falls within the express provision of section 3 of the Harter act (2 Supp. Rev. St. p. 81). This renders it unnecessary to determine whether the injury to the deck occurred solely during the hurricane immediately before the repairs, or partly from that cause and partly from the subsequent additional strain upon the hatch beams, through the heavy weight of water taken aboard on the voyage to New York after the repairs were made.

The libel should be dismissed but without costs.