HANSON et al. v. HAYWOOD BROS. & WAKEFIELD CO.

(Circuit Court of Appeals, Seventh Circuit.   January 11, 1907.)

No. 1,320.

SHIPPING—LIABILITY FOR LOSS OF CARGO—ERRORS IN NAVIGATION AND MANAGEMENT OF VESSEL.

    The navigation and management of a vessel within the meaning of section 3 of the Harter Act, Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946], includes the determination of the time and manner of leaving port, which is the prerogative of the master; and under said section, where a vessel was seaworthy and in all respects properly manned, equipped, and supplied, the owners are not liable for a loss or damage to cargo due to a peril of the seas, even though the exposure to such peril was through the fault of the master in failing to ascertain or heed the warnings of the weather bureau before starting on the voyage.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

This appeal is by the claimants of the schooner Emily B. Maxwell from a decree in admiralty against the schooner, upon a bill filed by Haywood Bros. & Wakefield Co., owners of a cargo of lumber, to recover for the loss of a deck load thereof on the voyage of the vessel from Pine Lake to Chicago. The lumber was laden at East Jordan, on Pine Lake, about 16 miles from Charlevoix, Mich., and the schooner proceeded in tow to Charlevoix, arriving about 3 p. m. in a rainstorm, but with fair weather for sailing; so the schooner was towed out into Lake Michigan and headed for Chicago, with a light southwest wind. About 6 p. m. the wind came around to the northwest, increasing to a gale, and raising a heavy sea before midnight. The deck load was washed overboard by the sea, and sails and spars were injured by the storm. The libel alleges that storm signals were displayed at Charlevoix, when the schooner arrived there, and a bulletin was posted at the station, reading: "S. W. gales, shifting to N. W. this afternoon and tonight, with severe and dangerous thunder squalls, dangerous for practically all vessels to leave port." Negligence of the master is averred in thus sailing from Charlevoix—that he "willfully disregarded the warning of said weather bureau"—and such negligence is charged as the proximate cause of the loss suffered by the appellees. The master observed one signal which indicated "high southwest winds," but did not go to the signal office for information bulletined there. He testifies that the wind indicated by the flag was favorable for leaving Charlevoix, where the harbor opens northward; that his barometer indicated a shift of wind to the northwest, and it was deemed prudent and desirable to round the point before the wind shifted, as no dangerous storm was apprehended, and the northwest wind was favorable for the course to Chicago. The decree of the District Court upheld the libelants' contention of negligence, and awards recovery for the value of the lumber so lost.

Chas. E. Kremer, for appellants.

D. V. Schuyler, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts). The propositions on which the libel rests, and as well the decree, are threefold: (1) that the master was negligent per se in proceeding upon the voyage without consulting the reports of the weather bureau, when the warning signal was observed; (2) that such negligence was the proximate cause of the cargo loss; and (3) that the vessel and her owners were chargeable with liability for the assumed negligence of the master. Unless each of these contentions is tenable, the decree cannot be upheld, and the primary question for solution, in any view of the master's failure either to inform himself of the weather bureau advices or to delay prosecution of the voyage thereupon, is whether liability for loss of the deck load can be thus predicated.

Exemption from such liability is claimed under the provisions of the act of February 13, 1893, c. 105, known as the "Harter Act" (27 Stat. 445 [3 U. S. Comp. St. 1901, p. 2946]), of which section 3 reads:

"That if the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel, nor shall the vessel, her owner or owners, charterers, agent, or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God, or public enemies, or the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, or seizure under legal process, or for loss resulting from any act or omission of the shipper or owner of the goods, his agent or representative, or from saving or attempting to save life or property at sea, or from any deviation in rendering such service."

It is undisputed that the schooner was "in all respects seaworthy and properly manned, equipped and supplied," so that due diligence was exercised upon the part of the owners for carriage of the cargo. The departure from Charlevoix on the voyage to Chicago was an exercise of the master's prerogative in the management and navigation of the vessel, and we are of opinion that it was plainly within the terms and intent of the foregoing limitation of liability for faults or errors therein. Assuming (without deciding) that it was the duty of the master, not only to ascertain the full import of the reports at the signal station, but to rely upon such general warnings, rather than his own observations and judgment, and discontinue his voyage—when it was his belief that the signal as displayed meant favorable wind without serious danger—such obligation on his part was due alike to vessel and cargo. Under the express terms of the statute, the assumed fault in prosecuting the voyage is not attributable to the seaworthy vessel or her owners, as it relates alone to the management and navigation of the vessel. The Silvia, 171 U. S. 462, 466, 19 Sup. Ct. 7, 43 L. Ed. 241; The Wildcraft, 130 Fed. 521, 65 C. C. A. 145, affirmed 201 U. S. 378, 26 Sup. Ct. 467, 50 L. Ed. 794; The Etona, 71 Fed. 895, 18 C. C. A. 380; The Guadeloupe (D. C.) 92 Fed. 670. The numerous decisions cited in support of the decree are plainly distinguishable, having reference to the lading and care of the cargo, apart from the navigation, and are inapplicable to the negligence alleged in this libel. The master has entire charge of the navigation

of the vessel, which includes the time and manner of leaving port, equally with the course of sailing and the sail to be carried. So the contention that the voyage commenced at Charlevoix, and not East Jordan, on Pine Lake, the port of lading, if true under the conceded facts, is without force.

The decree of the District Court is reversed accordingly, with direction to dismiss the libel.