# THE WILDCROFT.[1]

CERTIORARI TO THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE THIRD CIRCUIT.

No. 127.    Argued December 12, 13, 1905.—Decided April 2, 1906.

The relief afforded by § 3 of the Harter act, 27 Stat. 445, to shipowners is purely statutory and in order for a shipowner to avail of the exemptions from liability for errors of management or navigation the burden is on him to prove affirmatively, in all cases, and not only in those where there is conflicting testimony, that the vessel was seaworthy at the beginning of the voyage or that due diligence had been used to make her so. The discharge of the duty of the shipowner in this respect is not left in the absence of proof to any presumption.

Findings of fact by both the District Court and the Circuit Court of Appeals as to seaworthiness of a vessel at, and due diligence used prior to, the commencement of the voyage will not ordinarily be disturbed by this court and so held in this case.

THE facts are stated in the opinion.

*Mr. Horace L. Cheyney,* with whom *Mr. John F. Lewis* was on the brief, for petitioner:

Prior to the passage of the Harter act the law was firmly established that the burden was upon the carrier to show affirmatively that the damage was occasioned by one of the perils from which he was validly exempted by the bill of lading. *Clark* v. *Barnwell,* 12 How. 272; Hutchinson on Carriers, 2d ed., § 765.

The Harter act has made no change in this rule. The claimant is exempted from liability for loss occurring by "perils of the sea," both by the provisions of the Harter act, and those of the bill of lading. Of course, the burden of proof is the same as to such perils, whether he defends on the ground of the exemption in the bill of lading or under the Harter act. The rule is likewise applicable to the other statutory exemp-

---

[1] Docket Title *W. J. McCahan Sugar Refining Company* v. *Steamship Wildcroft.*

tions in the Harter act. The purpose of that act was not to change in any way the burden of proof, but to specifically define what contractual exceptions might be made lawfully and to provide certain additional statutory ones.

The burden of proof as to the exercise of due diligence by the shipowner to make the ship in all respects seaworthy rests on the owner claiming exemption and this rule is unchanged by the Harter act. *The Silvia*, 171 U. S. 462; *The Southwark*, 191 U. S. 1; *The Manitou*, 127 Fed. Rep. 554; *The Edwin I. Morrison*, 153 U. S. 199; *Farr & Bailey Mfg. Co.* v. *International Navigation Co.*, 181 U. S. 218.

This court in *Farr* v. *Int. Nav. Co.*, supra, and *The Southwark*, supra, did not find that the burden of proof on the shipowner to show due diligence on his part to make the ship seaworthy was met by this presumption of seaworthiness, but held the ships liable in each case because their owners did not meet the burden of proof by affirmative evidence showing that they had used due diligence to make the vessels seaworthy. *The Chattahoochee*, 173 U. S. 540, distinguished. That was a collision case, in which the injury resulted solely from faults or errors of navigation, and the question of the seaworthiness of the vessel was not in issue and was in no wise connected with the collision.

There was no evidence whatever proving that the valves were open or that the accident was caused by an error or fault of navigation. The claimants' witnesses were not asked directly as to their personal knowledge. Their evidence therefore is merely indirect and does not fall in the class of circumstantial evidence and is entitled to no weight and raises the presumption that the facts, if brought out, would have been prejudicial. 2 Evans' Pothier, 149, quoted in *Clifton* v. *United States*, 4 How. 240; *Kirby* v. *Talimadge*, 160 U. S. 379. As to the value of testimony as to inspections by ship's officers, see *The Manitou*, 116 Fed. Rep. 160; *The Aggi*, 93 Fed. Rep. 484.

Section 3 of the Harter act should be liberally construed

in favor of the cargo owner. *The Delaware,* 161 U. S. 471; *The Southwark,* 191 U. S. 1; *The Manitou,* 127 Fed. Rep. 554.

*Mr. J. Parker Kirlin,* with whom *Mr. Charles R. Hickox* was on the brief, for respondent:

The damage to the cargo was due to perils of the sea and river, and to an accident of navigation within the exception contained in the bills of lading. The damage by salt water to the bags of sugar at the top of No. 3 hold was concededly caused by perils of the sea. The damage to the cargo at the bottom of Nos. 3 and 4 holds was apparently caused by fresh water. This damage was due to a peril of the river within the meaning of the bills of lading.

The question of negligence in the operation of the valves would be important only in determining whether or not the benefit of the exception should be given to the shipowner. Negligence would not be important in determining whether the damage done by river water was in fact, due to a peril of the sea. *Blackburn* v. *Liverpool, Brazil & River Plate Steam Navigation Co.,* 1902, 1 K. B. 290; *The Xantho,* 12 App. Cas. 503, 513; *Hamilton* v. *Pandorf,* 12 App. Cas. 518, 522.

In fact there is no distinction in the meaning of the term perils of the sea as used in a bill of lading and in a policy of insurance. *The G. R. Booth,* 171 U. S. 450, 459; *Carruthers* v. *Sydebotham,* 4 Maule & S. 77.

The adventitious presence of an extraneous substance under the non-return valve in the bilge distribution box, a condition which must have existed, was not an independent intervening cause to deprive the inroad of the water upon the cargo of its character of a peril of the river.

The fact that the non-return valve was wedged open was not due to negligence. It could have occurred only by the working of the pumps on the suction pipe to the hold. It was, therefore, properly an accident from machinery or steam

navigation within the exception of the bill of lading. *The Prussia*, 88 Fed. Rep. 531, 536; *The Curlew*, 55 Fed. Rep. 1003; *Adams* v. *Morris*, 18 Sess. Cas. (4th series) 153; *The Southgate* (1893), Prob. 329.

If it has been demonstrated that the damage to the cargo was caused by a peril of the river or navigation as excepted in the bills of lading, it is a settled principle of law that the burden of showing that negligence of the carrier contributed to the damage, rests on the libellant. *Clark* v. *Barnwell*, 12 How. 272, 280; *Cau* v. *Texas & Pacific Ry. Co.*, 194 U. S. 427, 432.

The vessel is relieved from liability for the damage under the provisions of the Harter act. The damage was due to a fault in the management of the vessel. Apparently, it could have been ascertained whether the cocks and valves on the branch connection to the tank filling pipe were open or closed before the sea-cock was opened.

Failure to exercise such care in order to protect the cargo against a known possible danger from water which was about to be taken into the pipe line from the sea, would clearly be negligence in management on the part of those charged with the duty. *The Silvia*, 171 U. S. 426; *The Mexican Prince*, 82 Fed. Rep. 484; *S. C.*, 91 Fed. Rep. 1003; *S. C.*, 174 U. S. 801. Equally clearly would such negligence seem to constitute a fault or error in navigation or in the management of the vessel within the language and meaning of the third section of the Harter act. *The Silvia*, 171 U. S. 462; *The Southgate* (1893), Prob. 329; *Good* v. *London &c. Association*, L. R. 6 C. P. 563; *The Warkworth*, 9 Prob. Div. 20, 145; *Carmichael* v. *Liverpool &c. Association*, 19 Q. B. Div. 242; *Canada Shipping Co.* v. *British &c. Association*, 23 Q. D. Div. 342.

It is not necessary to contend that this fault or error was in the navigation of the vessel, although it is believed that the term "navigation" might properly be construed as broad enough to cover this state of facts. *The Warkworth*, 9 Prob. Div. 20, 145. See also *The Glenochil* (1896), Prob. 10; *The*

*Carron Park* (1890), 15 Prob. 203; *The Rodney* (1900), Prob. 112.

The act of negligence need not involve the safety of the ship. The negligence is within the protection of the Harter act if it concerns only the safe carriage of cargo. *Rowson* v. *Atlantic Transport Co.* (1903), 2 K..B. 666. This view of the act taken by the Court of Appeals in England is in accord with the interpretation put on that section by this court. *The Southwark,* 191 U. S. 1, 7.

The failure to make proper use of a vessel's pumping connections, between the engine-room and her holds, in order to get water out, has been construed to be a fault in management, in *The Mexican Prince, supra; The Sandfield,* 79 Fed. Rep. 371; *S. C.,* 92 Fed. Rep. 663; *The British King,* 89 Fed. Rep. 872; *S. C.,* 92 Fed. Rep. 1018; and *The Ontario,* 106 Fed. Rep. 324; *S. C.,* 115 Fed. Rep. 769. Failure to use them properly so as to prevent water from going in must be viewed as a fault of the same nature. *The Cressington* (1891), Prob. 152, 160; *The Silvia,* 171 U. S. 462.

The question remaining to be determined on this branch of the case is whether or not the shipowner has satisfactorily established the seaworthiness of the vessel on sailing, or the due diligence to accomplish that result. The Supreme Court has determined that "in the absence of proof to the contrary, a vessel will be presumed to be seaworthy" for the purpose of this statute. *The Chattahoochee,* 173 U. S. 540, 550.

This presumption of fact had been declared long before the statute took effect. *Pyman* v. *Von Singen,* 3 Fed. Rep. 802; *Bullard* v. *Roger Williams Ins. Co.,* 1 Curtis, 148; *Lunt* v. *Boston Ins. Co.,* 6 Fed. Rep. 562, 566, 567; *Pickup* v. *Thames & Mersey Mar. Ins. Co.,* 3 Q. B. Div. 594; *Guy* v. *Citizens' Mut. Ins. Co.,* 30 Fed. Rep. 695; *Baltimore &c. Ry.* v. *Landrigan,* 191 U. S. 461, 471, 472. See also *The Joinville* in the Admiralty Division of the High Court of Justice in England, reported in the Shipping Gazette of December 13, 1904. The

statement of a presumption of seaworthiness in a vessel is not in conflict with the previous holdings of this court. *International Navigation Co.* v. *Farr & Bailey Mfg. Co.*, 181 U. S. 218, 226.

Where evidence has been produced tending to show that the damage complained of was caused by unseaworthiness the burden at the end of the case may very well be on the shipowner who claims, as affirmative defense, the protection of the act to establish that the circumstances exist that are required by the act as a prerequisite to the granting of the exemption. Thayer, Preliminary Treatise on Evidence at the Common Law, 355.

Notwithstanding, however, that the shipowner may have in a given case, the burden of establishing the exercise, on his part, of due diligence to make the vessel seaworthy, yet he may start with the presumption that the vessel was, in fact, seaworthy at the commencement of the voyage. Actual seaworthiness would necessarily assume that the diligence to secure it that is required by the act had been exercised. If any evidence has been given to the contrary, there will then be cast on the libellant the duty of going forward and producing evidence to combat the effect of the presumption. Thayer, Preliminary Treatise on Evidence, 365. The existence of the presumption of seaworthiness does not shift the burden of proof on that issue from the shipowner to the libellant but it does shift the duty of going forward with evidence from the shipowner who advances the proposition to the libellant who opposes it. Thayer, Preliminary Treatise on Evidence, 336; *Kidder* v. *Stevens*, 60 California, 414, 419; *Keeley* v. *Moore* 191 U. S. 38, 46, 47. The presumption is to be weighed like any evidentiary circumstance. *Hickory* v. *United States*, 160 U. S. 408, 421.

Both courts below are clearly right in saying there was a presumption of fact that the vessel was reasonably fit at the outset of the voyage to carry the cargo she had undertaken to transport. There is not any evidence in the case from

which it can reasonably be inferred that the vessel was unseaworthy at any time prior to the day when the damage occurred. The findings of the courts below did not lay down a rule concerning the burden of proof inconsistent with that announced in this court in The Southwark, 191 U. S. 1.

Practical tests of a similar nature to those employed in this case have been held in other cases sufficient to establish the point at issue. American Sugar Ref. Co. v. Rickinson Sons & Co., 124 Fed. Rep. 188; The Ontario, 106 Fed. Rep. 324; S. C., aff'd, 115 Fed. Rep. 769; The British King, 89 Fed. Rep. 872; S. C., aff'd, 92 Fed. Rep. 1018; The Sandfield, 79 Fed. Rep. 371; S. C., aff'd, 92 Fed. Rep. 663; The Marechal Suchet, 12 Fed. Rep. 440, 441, and cases there cited.

The valve could and should have been closed before the sea valve was opened. The situation would come within the reasoning of the Mexican Prince, 82 Fed. Rep. 484, 488; S. C., 91 Fed. Rep. 1003; The Silvia, 64 Fed. Rep. 607; S. C., 68 Fed. Rep. 230; S. C., 171 U. S. 462.

MR. JUSTICE DAY delivered the opinion of the court.

The original action was begun by the filing of a libel in the District Court of the United States for the Eastern District of Pennsylvania, to recover damages alleged to have been sustained by the petitioner, with respect to a cargo of sugar of which it was the consignee, shipped upon the steamship " Wildcroft " from ports in Cuba to Philadelphia. The evidence showed that in the month of April, 1901, the " Wildcroft," having discharged a cargo of coal at the port of Havana, proceeded to Cardenas and Matanzas, where she took on the load of sugar, to be delivered to the petitioner in Philadelphia. This sugar was stored in bags in holds Nos. 1, 2, 3 and 4 of the ship. On the voyage a severe storm was encountered and some damage was done by salt water finding its way into hold No. 3 because of the tearing away of the tarpaulins over the hatches and the washing off of the starboard ventilator cover. At the

hearing in the District Court the claim for damage, because of injury alleged to have been caused to the sugar in holds Nos. 1 and 2, was held to be waived by the libellant, who disclaimed damage on that account. And, the district judge added, we think correctly, as to the surface damage in hold No. 3, "this damage was concededly caused by a peril of the seas." There is nothing in the testimony to show that the injury to the cargo of sugar in holds Nos. 3 and 4 of the vessel by means of fresh water was occasioned until the ship arrived at Philadelphia.

A more distinct understanding of the construction of the vessel and the manner in which fresh water could be communicated to hold No. 3, and from thence into hold No. 4, may be had by a perusal of the full finding of the facts made in the case in the District Court, 124 Fed. Rep. 631; S. C., 126 Fed. Rep. 229, approved by the Circuit Court of Appeals, 130 Fed. Rep. 521, which findings fully explain the situation and the method by which the injury was inflicted. It is enough for us to say that both courts unite in the conclusion that the cargo was injured on Monday, April 29, after the ship arrived at the dock in Philadelphia, when, because of the letting in of fresh water for the purpose of filling the engine-room tank, which was accomplished by opening a valve on the ship's side which admits water from the river, and because of an open cock to a valve in the connection from the tank-filling pipe to the service or feed donkey, connecting with the distribution box, water was permitted to flow from the tank-filling pipe through this open cock to the distribution chest and down a pipe and through a valve, which must have also been held open in some way so that water flowed into this suction pipe leading into No. 3 hold, and flowing thence into No. 4 hold, damaged the cargo of sugar therein contained. It is evident from the testimony that if these cocks, and more particularly the one marked "D," had been properly closed, the water could not have found its way into the holds and inflicted the damage. Of these findings the Circuit Court of

Appeals, adopting the conclusions of the court below, said: "All of the testimony in this respect is uncontradicted, and no facts are shown from which any other conclusion can be drawn, than that the water which came into the bottom of these holds, to the depth of several feet, doing the damage in question, came in after the early morning of the twenty-ninth of April, and before the close of that day, while the cargo was being discharged at the wharf in Philadelphia. It is not disputed that the water was fresh water, such as was the water in the Delaware river, in which she was lying. In connection with these facts, it was shown by the testimony that the sea-cock for filling the engine room tank was open at ten o'clock that morning, and kept open for a period of three hours, and that if two certain cocks, fully described in the evidence and pointed out by the learned judge of the court below, were left open by accident or design, there would be a free flow of water from the open sea-cock into the bilges of hold No. 3. Directly after the filling of the tank and the closing of the sea-cock, water to a considerable depth was reported in holds No. 3 and No. 4. This sea-cock had not been open from the time the cargo was put on board in Cuba until, as just stated, on the morning of the twenty-ninth of April, at Philadelphia. We think the court below was fully justified in its finding, that the damage here in question was due to 'the water that flowed into the hold through the pipe line on April twenty-ninth, in the manner just described,' and that 'it is impossible that the damage could have occurred in any other way.' "

In order to have the benefit of the exemptions provided in the Harter act, 27 Stat. 445, against errors of management or navigation by reason of the third section, which was relied upon in the case, it was incumbent upon the shipowner to prove that the vessel was seaworthy at the time of beginning the voyage, or that due diligence had been used to make her so. *International Navigation Company* v. *Farr & Bailey Manufacturing Company*, 181 U. S. 218; *The Southwark*, 191

U. S. 1. It, therefore, became incumbent upon the shipowner to show that a due and proper inspection had been had and the vessel ascertained to be in all respects seaworthy and fit to carry the cargo which she had undertaken to transport, or that due diligence to that end had been used. As we understand the findings of both the District Court and the Court of Appeals, the testimony in this regard introduced by the shipowner was sufficient, in the judgment of those courts, to establish that the vessel was seaworthy in the respects involved, and that an inspection had been had, and the valves and connections, the negligent use of which was productive of this injury, found in due order at the beginning of the voyage. This finding of two courts will ordinarily not be disturbed, and is usually accepted by this court as conclusive. *The Carib Prince,* 170 U. S. 655, 658. The only testimony directly upon the subject at the hearing was that of the master and the engineer, taken upon deposition in England, upon interrogatories filed. The charge in the libel was very broad and general, and the interrogatories were not as specific as they might have been, and no cross-interrogatories were filed. While the testimony is not as specific as it might be, we still think it was sufficient to show that an inspection was had, and everything found in order at the beginning as well as during the voyage, and from the record we reach the conclusion, sustained by the findings of the courts below, that the ship was seaworthy in all respects at the beginning of the voyage, and it was a careless and recent opening of the valve or valves, shortly before the fresh water was let it, which resulted in the damage complained of. We are very clear that this is not a case where the findings of the court below can be disturbed, as was our conclusion in the case of *The Southwark, supra,* relied upon by the petitioner, where it was shown that the damage inflicted was the result of unseaworthiness in respect to a condition which a proper inspection of the vessel at the beginning of the voyage would have discovered and remedied. We, therefore, reach the conclusion that the decree of the

Circuit Court of Appeals should be affirmed, and but for its construction of the rule of evidence in cases of this kind this opinion might well end here. But we are unable to agree with the views expressed in the opinion of the learned Circuit Court of Appeals to the effect that where a shipowner seeks the protection of the immunity afforded by the Harter act under section 3, reliance may he had upon the presumption of law that the vessel was seaworthy at the beginning of the voyage, and that it is only in cases of conflicting proof that the burden is imposed upon the shipowner, of establishing by testimony the seaworthiness of the vessel, or due diligence in that behalf, in order to have the benefit of the act. We think this construction of the law is opposed to the terms and policy of the act and contrary to the decisions of this court heretofore announced, from which we see no occasion to depart. The relief afforded by the third section of the Harter act to the owner of a vessel, transporting property, is purely statutory. In the case at bar there could be no question as to the liability of the vessel owner from the established facts of the case, but for the immunity afforded by that act. To permit a cargo of sugar to be injured by the introduction of fresh water in the manner shown, but for the provisions of this act, would have made a case of clear liability against the owner, and where the statute has given immunity against such loss by reason of error in navigation or management, it does so upon the distinct condition that the owner shall show that the vessel was in all respects seaworthy and properly manned, equipped and supplied for the voyage; or, if this cannot be established, that he has used due diligence to obtain this end. The discharge of this duty is not left to any presumption in the absence of proof. It is the condition precedent, compliance with which is required of the vessel owner in order to give him the benefit of the immunity afforded by the act. The reason for requiring this proof by the owner is apparent. He is bound to furnish a seaworthy and properly equipped ship for the purpose of the voyage. Whether he has done so is a matter

peculiarly within his own knowledge. The inspection which he 'can give, but which the shipper cannot give for lack of opportunity, will establish whether this duty has been complied with. The whole matter is in the control of the owner. The law says, in substance, that when the owner can show that he has discharged this duty he shall be relieved from errors of navigation and management on the voyage, over which he has not such direct control. It is not a case where there is either the necessity or propriety of resorting to presumptions. It is only when he has discharged the burden which the law imposes upon him, and shown that he has furnished a vessel, fit and seaworthy, or has used due diligence to that end, that the law relieves him of the liability which he would otherwise incur. This construction of the statute has been more than once announced in the decisions of this court; recently in *International Navigation Company* v. *Farr & Bailey Mfg. Co.*, 181 U. S. 218, 226, in which this court, speaking through Mr. Chief Justice Fuller, said: "We repeat that even if the loss occurred through fault or error in management, the exemption cannot be availed of unless the vessel was seaworthy when she sailed, or due diligence to make her so had been exercised, and it is for the owner to establish the existence of one or the other of these conditions." This case was quoted and followed in the still later case of *The Southwark*, 191 U. S. 1, in which it was reiterated that the burden was upon the vessel owner to show by reasonable and proper tests that the vessel was seaworthy and in a fit condition to receive and transport the cargo undertaken to be carried, and that, if, by failure to adopt such tests and furnish the required proof, the question of the ship's seaworthiness was left in doubt, that doubt must be resolved in favor of the shipper, because the vessel owner had not sustained the burden cast upon him by the law to establish that he had used due diligence to furnish a seaworthy vessel.

While we, therefore, accept the decision of the learned Circuit Court of Appeals as to the facts in this case, we do not

wish to be regarded as sanctioning any relaxation of the rule above stated, already laid down in the prior decisions of this court.

*Decree affirmed.*

MR. JUSTICE BROWN concurs in the result.