JEREMIAH WILLIAMS & CO., INC., Plaintiff, v. LAMBERT & HOLT, INC., Defendant.*.

City Court of New York, New York County, November 1, 1927.

Ships and shipping — negligence — liability of shipowner for merchandise damaged by sea water — shipowner liable for negligence — verdict for defendant set aside and new trial granted — costs — costs should not be imposed against plaintiff under circumstances.

Defendant, on whose ship a consignment of wool was damaged by sea water, is liable to plaintiff for negligence where the proof shows that the defendant failed to exercise due diligence to insure the seaworthiness of the ship, particularly where it was not demonstrated on the trial that the weather was severe enough to warrant a finding that the damage done was one of the ordinary incidents of the voyage.

The burden is on the shipowner to excuse the fault and make a clear case that it fully discharged the duty it undertook to perform in behalf of the shipper.

The verdict of the jury in favor of the defendant, having been rendered under a misapprehension of the law and facts, must be set aside and a new trial granted, but without imposition of costs against the plaintiff.

MOTION by the plaintiff to set aside a verdict in favor of the defendant in an action to recover damages claimed to have been caused by sea water to wool through the negligence of the defendant carrier.

Harry D. Thirkield, for the plaintiff.

Slayton & Jackson [G. Noyes Slayton of counsel], for the defendant.

FINELITE, J. This action was tried before the court and a jury and resulted in a verdict in favor of the defendant. A motion for a new trial was thereupon made by the plaintiff and entertained by the court. This action was brought to recover for damage claimed to have been caused by sea water to two parcels of wool, consisting of one hundred bales and forty-one bales, respectively, shipped at Buenos Ayres, Argentine Republic, November 29, 1924, consigned to order of the First National Bank of Boston, where they were delivered in January, 1925. A bill of lading was issued for the transportation of said merchandise on the steamship Socrates, of which cargo C. Altgelt & Co. was the shipper and the First National Bank of Boston was the consignee. Plaintiff contends

---

* Revd., 131 Misc. 514.

defendant negligently permitted the wool to be damaged by sea water. The two parcels were accepted by the defendant under two bills of lading prepared by the shipper and submitted to the defendant's agent at Buenos Ayres for signature. The pertinent portions of each of said bills of particulars were produced on the trial. They recite that the bales of wool were shipped " in apparent good order and condition  *  *  *  quality  *  *  * class of goods  *  *  *  contents  *  *  *  value  *  *  *  of the goods unknown." Each bill stipulated that the ship was not liable for damages from the entry of water into the ship from any cause, and that the defendant carrier was not liable unless written notice of claim was presented at the office of the steamship's agent at the port of discharge within three days after removal of the shipment. The defendant contends that no such notice was given as prescribed or at any other time. The evidence introduced by the plaintiff was in the form of depositions. One witness, Dillaway, testified he was a cargo surveyor in Boston and examined forty-seven particular bales and found twenty-one bales sound, five bales subject to ten per cent allowance and twenty-one bales subject to fifteen per cent allowance, and that the said bales had been in contact with sea water; that he arrived at the percentages " by opening up representative bales." Another witness, Carle, a director of plaintiff corporation, identified the invoices and testified to allowances made on the sale, and, although he did not see or sell the bales, he was positive that he knew the wool had been damaged when the steamship arrived. Further evidence was produced in the form of depositions of other witnesses in reference to the survey that was made as well as to forty-four bales of wool which were on board said vessel and were part of the shipment of one hundred and forty-one bales. Plaintiff further offered proof and contends that the wool had been in contact with sea water in the course of its transportation on the steamship *Socrates,* and that it had been stowed in lower hold No. 2 and made wet by sea water which entered when the tarpaulins and hatch covers were carried away in a storm that caused additional structural damages to the ship; that it was because of the entry of sea water into the ship that the wool was affected. The deposition of one Griffith was read, and on cross-examination he testified that the ship was around 300 miles south of Nantucket and on the southern edge of the Gulf Stream, which experienced bad weather in November and December of any year or any time at all of the year. He testified moderate wind and moderate breeze are the same thing and that a fresh breeze would be a trade wind, and he always experienced such winds in the trades, and that they caused tarpaulins to be placed

over the hatches when they reached the trades. And that said hatch No. 2, where the merchandise of plaintiff's assignor was stowed, also contained cocoa, and that over the hatch there were wooden hatch covers and over the hatch covers there were tarpaulins, but no tarpaulins in the 'tween decks. And that a heavy storm came up when they struck the Gulf Stream, 300 miles off Nantucket, and the sea was so heavy that the steampipe casings that ran along the deck were lifted and came in contact with the hatch covers and tore the tarpaulins off three sides of the hatch cover; also six or seven of the wooden hatch covers on this particular hatch were washed away and sea water entered the hatch and damaged the wool; that it may have been the steampipe casings, but not deck cargo, that tore the tarpaulins and caused them to come off the hatch; they were cut right across the hatch, and that the steampipe casings which run along with the hatch coamings, along No. 2, were in the wettest part of the ship, and that the only cargo that sustained damage on the voyage was in No. 2 hatch and a few bags in No. 3; that the hatch covers were incased in a frame of some material and it was screwed down in the hold; that from the effect of the steampipe casings the tarpaulins were torn off, one cut right across, and only one side remained fastened, but the wedges were still in and all around, and six or seven sectional wooden hatch covers on this particular hatch were washed away from the effect of the storm and the sea water coming against the same; that a strong wind was the same thing as a strong gale, and that a gale, hurricane or typhoon are all the same thing to an ordinary man — a strong wind; that the casings are over the steampipes as a safeguard in discharging cargo so that cargo cannot drop on the pipes; that the casings and steampipes were washed up right along the forecastlehead, all in the forepart of the ship, and that they run along the hatch coamings; that the casings over the steampipes were not inclosed, just a single plate on top bolted on to iron chairs and bolted to the deck, and water getting under it lifts it up if the steampipes go as well; that when the tarpaulins split the waves came in hatch No. 2. And Griffith, the chief officer of the ship, testified he was quite positive that at the beginning of the voyage the engineers, whoever have charge of tightening the bolts, did not go around and make more secure the steampipe casings, and it was not done at the end of every voyage, "not in Lamport & Holt's, it isn't necessary," although casings get washed up. Plaintiff proved the damage sustained and the amount thereof, by calculation, and sought a verdict because of the negligence of the defendant in not having the hatch covers and tarpaulins properly secured over said hatches

and in proper condition and properly sealed or screwed down, so that when the storm came up the water entered and percolated through and under the tarpaulin and hatch covers and in and through the net holes and damaged the merchandise of the plaintiff's assignor. The defendant, on the other hand, presented facts to the effect that if any damage was sustained by plaintiff's assignor to its merchandise it was caused by the elements and not by negligence on the part of the defendant, and the defendant moved, on three grounds, to dismiss the complaint, which the court denied and allowed the question of fact to go to the jury, whether the damage was caused by the elements or through negligence of the defendant in not properly examining its vessel and hatches and covers before sailing or *en route* for Boston with the merchandise of plaintiff's assignor therein. A great deal of stress was laid on the conditions of the bill of lading and the various conditions therein contained in reference to the liability of the defendant for damages that may occur on the high seas. The defendant has cited quite a number of authorities to sustain its contention. The plaintiff, on the other hand, has cited a number of authorities to uphold its motion to set aside the verdict, to the effect that the jury was mistaken in its verdict, and that it was through carelessness more than because of high seas that damage occurred to the merchandise of plaintiff's assignors. There are quite a number of authorities on the question, and the books contain various phases of the effect of negligence as well as in reference to the elements. There is no necessity for the court to cite all these authorities or even to refer thereto with the exception that it appears, in an expression on this question as late as February, 1927, the Circuit Court of Appeals, Fifth Circuit, in *Nederlandsche Amerikaansche Stoomvaart Maatschappij* v. *Mediterranean & General Traders, Inc.* (17 F. [2d] 586): "A ship held liable for damage to cargo from seawater, which leaked through an open rivet hole, which, so far as shown by the evidence, may have been open when the voyage commenced. The burden rests upon a shipowner to prove the exercise of due diligence to make the ship seaworthy, which will exempt her from liability under Harter Act, § 3 (Comp. St. 8031; 27 U. S. Stat. at Large, 445; U. S. Code, tit. 46, § 192), and that burden is not sustained by evidence of a superficial inspection, nor by evidence so indefinite that it is impossible to say that any real inspection was made, nor by evidence that he employed competent men to do the work, but he is responsible for their failure." And BRYAN, Circuit Judge, writing the opinion of the court, says (17 F. [2d] 587): "A cargo of whiting or chalk was damaged by water while it was being carried by the Steamship *Leerdam* on a voyage

from Antwerp to New Orleans. The owner of the cargo libeled
the steamship and was awarded a decree for the damage. The
owner of the steamship appeals, and contends that the evidence
shows that it exercised due diligence to make the ship seaworthy,
and that the damage was caused either by a latent defect or by
a peril of the sea. A clause of the bill of lading, pursuant to
section 3 of the Harter Act, exempts appellant from liability for
latent defects and perils of the sea, upon condition that it had
exercised diligence to make the ship seaworthy. The *Leerdam* was
a new ship. On her first voyage, rough weather was encountered,
and some water damage to the cargo was caused by the breaking
of rivets in the cabin bulkhead forward and in the main deck.
Upon the completion of that voyage, a survey was held. The
surveyor states in a most general way that it was thorough, but
he fails to state what was actually done. Within a few days after
that survey, the second voyage was begun, on which appellee's
cargo was shipped; and on it the *Leerdam* again encountered rough
weather, but not more severe than was reasonably to be expected
on the Atlantic at that season of the year. In order to steady
the ship, the forepeak tank was filled with seawater, which leaked
through a rivet hole in the bulkhead into hold No. 1, where appel-
lee's cargo was stored. No missing rivet was found, and it is
uncertain whether there ever was one in the rivet hole through
which the water leaked. A subsequent examination failed to dis-
close any evidence of weakness or straining about the bulkhead or
elsewhere. The burden of proving that due diligence has been used
to make a vessel seaworthy is upon the shipowner. (*The Wildcroft*,
201 U. S. 378, 26 S. Ct. 467, 50 L. Ed. 794.) That burden is not
sustained by evidence of a superficial inspection (*The Southwark*,
191 U. S. 1, 24 S. Ct. 1, 48 L. Ed. 65), nor where the evidence
is so indefinite that it is impossible to determine that any
real inspection was made. The evidence in this case is wholly
unsatisfactory, and is consistent with the inference that no test
whatever was made or undertaken. Due diligence to make a
vessel seaworthy must in fact have been exercised. It is not
sufficient for a shipowner to show that he had employed competent
men to do the work, but he is held responsible for the failure of the
men he employs. (*International Navigation Co.* v. *Farr & Bailey
Mfg. Co.*, 181 U. S. 218, 21 S. Ct. 591, 45 L. Ed. 830; *The Mary L.
Peters*, [D. C.] 68 Fed. 919; *The Manitoba*, [D. C.] 104 Fed. 145,
159.) In the absence of evidence that due diligence was exercised
by appellant or its agents, there is no means of determining whether
there was a defective rivet which was forced out or lost, or whether
the rivet hole had been left open from the beginning. We do not

think that the weather was shown to be rough enough to be considered a peril of the sea. It could well have been foreseen as one of the ordinary incidents of the voyage. (*The Rosalia*, [C. C. A.] 264 Fed. 285.) " The foregoing opinion of the Circuit Court of Appeals seems to be decisive of the case at bar. (See to the same effect *Toyo Kisen Kabushiki Kaisha* v. *Willits & Co., Inc.*, 17 F. [2d] 762, Feb. 14, 1927.) Owner held liable for damage to cargo from sea water which entered through two bolt holes through the shell of the ship, from which the bolts had worked loose and dropped out, though the ship encountered no unusually stormy weather, and all other similar bolts were found tight and in good condition. Where cargo is damaged by entry of water through apertures which should be protected the burden is on the ship to excuse the fault and make a clear case that it fully discharged the duty it undertook to perform toward the shipper. The courts have gone very far in this kind of cases in holding under such facts the limiting clause was not binding on the shipper, and the United States Supreme Court has said: " This court has consistently held the law to be that it is against public policy to permit a common carrier to limit its common-law liability by contracting for exemption from the consequences of its own negligence or that of its servants [*Hart* v. *Penn. R. R. Co.*, 112 U. S. 331, 338; *Boston & Maine R. R.* v. *Piper*, 246 U. S. 439, 444], and valuation agreements have been sustained only on principles of estoppel and in carefully restricted cases where choice of rates was given — where ' the rate was tied to the release.' " (*Union Pacific R. R. Co.* v. *Burke*, 255 U. S. 317.) The court is cognizant of the fact that where a jury do not decide a case upon prejudice, passion or mistake the court has no right to set the verdict aside or in any manner interfere therewith, but where the jury do not comprehend the facts in the case or have overlooked the law as charged by the court it is the duty of the court, in doing substantial justice to both sides, to set the verdict aside and grant a new trial — which the court does in this instance. The other question left to be determined is, Can the court grant costs to the defendant where a verdict is set aside as found by the jury and a new trial granted, as to what terms may be imposed on the setting aside of the verdict? It has been held that where a verdict is rendered by a jury under a misapprehension, the party in whose favor a new trial is granted should not be penalized by the imposition of costs. (*Wilmerding* v. *Feldman*, 54 Misc. 626; *Duffy* v. *City of N. Y.*, 55 id. 25; *Rothenberg* v. *Bklyn. Heights R. R. Co.*, 135 App. Div. 151; *Scheuer* v. *Manashaw*, 77 Misc. 208; *Stancourt Laundry Co.* v. *Lamura*, 147 N. Y. Supp. 895; *Post* v. *Kerwin*, 150 App. Div. 321.) Therefore, the court, on the authorities cited, grants the motion and sets aside the verdict

upon the ground that the same was not founded upon the evidence and the jury disregarded the court's instructions on the law, without imposition of costs. Settle order on one day's notice.