NAVIGAZIONE LIBERA TRIESTINA v.
GARCIA & MAGGINI CO. SAME v.
KLEIN–SIMPSON FRUIT CO. THE
FELTRE.

Circuit Court of Appeals, Ninth Circuit.
January 14, 1929.

No. 5522.

tends that the record conclusively established that the appellant did exercise reasonable means to make the ventilating fan system seaworthy, and points to the evidence that the chief engineer of the vessel joined it during its building and was put aboard to see the mounting of the motors, and remained with the ship from that time until the end of the voyage; that prior to departing from Trieste he inspected the ventilating system and fan and surveyed all parts thereof, and before installing the same inspected the material of all portions thereof, and inspected the mounting of them and the testing of them, and that all were in good order; that in his opinion the breaking down of the apparatus was caused from a defect which he could not discover at the time of the installation thereof; that every four or five days throughout the voyage test was made of the ventilating machinery and the fan by visual inspection and by tapping the ballbearings and other pieces of the machinery, and that at Puntarenas and San José the chief engineer dismounted the housing and looked inside and found everything in good condition. The captain of the Feltre testified to the inspection of the refrigerating plant and to the issuance of a survey certificate by Lloyd's Register of Shipping, covering the same, and he testified that he inspected the ventilating system with the builders and engineers from Lloyd's Register and the Registro Italiano, and saw the engineers adjusting and examining all parts of the same. Fantini, chief technical inspector of the appellant, testified that he was present at the installation and the official test of the refrigerating plant, and that special care and diligence were exercised at the test. Similar depositions were made by Carlini, the mechanical inspector of the appellant, who testified that each separate part of the refrigerating plant was examined and that there were no visible defects in the material. Sulligoi, surveyor of the Registro Italiano, deposed that the work was executed according to the prescriptions and regulations of the Registro Italiano, which are exactly the same, he said, as those of Lloyd's Register, and

Lillick, Olson & Graham, Ira S. Lillick, Chalmers G. Graham, and Theodore M. Levy, all of San Francisco, Cal., for appellant.

William B. Acton, of San Francisco, Cal., for appellees.

Before GILBERT and DIETRICH, Circuit Judges, and LOUDERBACK, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). ▪ The appellant con-

that plants identical with the type of the Feltre were being installed almost exclusively on vessels built at Trieste, and that such plants had given no trouble that might be attributed to defects in the type of construction. Lockney, surveyor for Lloyd's Register, testified that the greatest care was exercised throughout the installation of the refrigerating system and that every part of the plant was examined.

The testimony failed to convince the court

below, as it fails to convince us, that the breakdown of the refrigerating machinery was the result of a latent defect. Several witnesses testified as to the cause of the breakdown. Of the witnesses at Trieste, two deposed that they were unable to offer any explanation. One said that perhaps grit got between a ballbearing and the tooth of one of the rings. One said that he thought that one of the two rings supporting the balls broke, and one thought that the trouble must have been caused by some latent defect unknown to him. Of the witnesses who, as experts, testified before the court for the appellant, Becker said that he believed that one or more balls in the ballbearing became broken and that the remaining balls ran over the particles and jammed the bearing. Smith testified that the cause of the breakdown, in his opinion, was that either a ball in the bearing, or the retaining ring, or the retaining ring fastenings, broke first. The trial court rejected the theory suggested by the conjectures of these witnesses and relied upon evidence that tended to show that the structure as originally installed in the vessel was faulty in principle and in construction, and gave credence to the testimony of witnesses for the appellees, who, as experts, testified that such was in their opinion the cause of the collapse of the apparatus. They said that the wheel should have been put up near the bearing or the bearing near the wheel, or that, if that could not have been done, an outboard bearing should have been installed to take its share of the weight and to reduce the weight on the bearing, that the housing was too frail and thin, that where it broke it had been weakened by boring three holes for screws, that the fan was deflected sufficiently out of balance to cause a jamming of the ballbearing, and that vibrations of a shaft, if severe enough, will cause a ballbearing to break, that the shaft was of insufficient diameter to carry the burden of the wheel and its vibration; and one witness testified that no person, not even a layman, would not have known it to be improper to have a fan so far overhung on such a small shaft. It is to be observed in this connection that the appellant adduced no physical evidence to indicate that any ball in the ballbearing did in fact break or that there was a jam of the ballbearings. No fragment of a ball was shown and no evidence was given of mark or striation upon the ballbearing rings to indicate breakage or jamming.

To render available an exemption in a contract of carriage from absolute warranty of seaworthiness, the burden of proving the exercise of due diligence rests upon the shipowner, The Wildcroft, 201 U. S. 378, 26 S. Ct. 467, 50 L. Ed. 794, and it is not sufficient that the shipowner employs competent men to make the inspection. He is held accountable for the failure of the man he employs to discover patent defects, Int. Nav. Co. v. Farr & Bailey Mfg. Co., 181 U. S. 218, 21 S. Ct. 591, 45 L. Ed. 830; The Manitoba (D. C.) 104 F. 145, 151; The Phœnicia (D. C.) 90 F. 118. Said Mr. Justice Holmes in The Germanic, 196 U. S. 589, 596, 25 S. Ct. 317, 318 (49 L. Ed. 610) : "But it is a mistake to say, as the petitioner does, that if the man on the spot, even an expert, does what his judgment approves, he cannot be found negligent. The standard of conduct * * * is an external standard, and takes no account of the personal equation of the man concerned." In The Abbazia (D. C.) 127 F. 495, 496, Judge Adams said that the diligence required "is diligence with respect to the vessel, not in obtaining certificates." In The Ninfa (D. C.) 156 F. 512, 525, Judge Wolverton said: "I place but slight value on the surveys of the Italian Consul and Lloyd's surveyors, made before the ship left London, as their duties do not call for that rigid inspection and the application of known tests for the discovery of fault required of the owner for the determination of whether his vessel is seaworthy." The case here is to be distinguished from cases in which a machine or a portion of the equipment of a vessel breaks as the result of a flaw or defect not discoverable upon examination, as in the case of the breaking of a junk ring, The Curlew (D. C.) 51 F. 246, or a breakdown caused by the presence of a leather washer which could not be discovered until the apparatus was taken apart, The Prussia (D. C.) 88 F. 531; nor is it a case in which injury to the cargo was occasioned by negligence in the management of the ship, as in The Ontario (D. C.) 106 F. 324, cited by the appellant.

We are not convinced that we should disturb the finding of the court below that the breakdown of the ventilating system was the result of a construction so faulty in the proportions, strength, and adjustment of its parts that its insufficiency should have been discovered on inspection, and that there was absence of evidence of latent defects. The only suggestion of latent defects is found in the conjectures of the appellant's witnesses. Conjecture will not be permitted to take the place of proof. The Folmina, 212 U. S. 354, 363, 29 S. Ct. 363 (53 L. Ed. 546, 15 Ann. Cas. 748). In The Edwin I. Morrison, 153 U. S. 199, 212, 14 S. Ct. 823, 828 (38 L. Ed.

688), the court said: "The real point in controversy is, did the respondents so far sustain the burden of proof which was upon them as to render the probability that the cap and plate were in good condition and knocked off through extraordinary contingencies so strong as to overcome the inference that they were not in condition to withstand the stress to which on such a voyage it might reasonably have been expected they would have been subjected? If the determination of this question is left in doubt, that doubt must be resolved against them."

We cannot agree that the failure of the appellees to prove that they gave the appellant notice of their claims is a bar to their right to recover. Each answer in one of its paragraphs sets up the bill of lading, one of the provisions of which was that notice of any claim arising thereunder must be given by the consignees to the agents at the port of destination within 48 hours after the landing of or failure to deliver the goods, and elsewhere each answer pleaded its claim of advantage of all defenses available to it by the bill of lading. There was no allegation, however, in either answer that the notice had not been given or that a claim had not been filed, or that the libel was barred for that reason, and so far as is shown by the records in the court below, at no time was any such defense suggested by the appellant until after the court had made its findings some two months after the submission of the case, nor was there then an offer to amend the answers and plead that defense.

In Central Vermont R. Co. v. Soper (C. C. A.) 59 F. 879, 888, it was held, "on general rules of pleading," that it was not necessary for the plaintiffs to plead the giving of the notice, "as it is in the nature of condition subsequent," and "therefore," said Judge Putnam, "if the defendant below relied upon it, it should have been specially pleaded." Such was also the ruling in Southern R. Co. v. Mooresville Cotton Mills (C. C. A.) 187 F. 72, and such have been the rulings in this circuit. The Tampico (D. C.) 151 F. 689; Pacific S. S. Co. v. Sutton (C. C. A.) 7 F. (2d) 579, 581, and cases there cited. It may be added that it seems extremely doubtful whether a limitation of time for presenting notice to so short a period as 48 hours after arrival of the vessel at destination is reasonable, especially in a case where, as here, the carrier had itself before arrival thrown the cargo overboard and was in possession of all the facts.

The decree is affirmed.