**THE FRED E. HASLER.**

**PROCTOR & GAMBLE CO. v. ATLANTIC OIL TRANSIT CORPORATION.**

**No. 144.**

Circuit Court of Appeals, Second Circuit.

Feb. 8, 1932.

See, also, 55 F.(2d) 389.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark, Eugene Underwood and Adrian J. O'Kane, all of New York City, of counsel), for appellant.

Haight, Smith, Griffin & Deming, of New York City (Charles S. Haight and Wharton Poor, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The construction of the barge Hasler, and the facts relating to her sinking and to her condition when raised, are set forth in detail in the opinion below, reported in 51 F.(2d) 779. They will not be here repeated except in so far as they may be stated in the discussion which follows.

The Hasler was chartered from the respondent to carry oil from a whale oil factory ship berthed at Pier 6, Staten Island, to the libelant's plant at Port Ivory, Staten Island. Loading of the barge was completed about midnight on April 15, 1929. During the early hours of the following morning a violent storm blew up from the northeast, heavy seas swept into the slip and washed over the Hasler as she lay moored alongside the ship, and about 5 a. m. she sank. This suit followed. The libel sets out a cause of action in contract, charging a breach of the implied warranty of seaworthiness contained in the contract of affreightment; and the libelant's evidence was directed to proving that some of the hatch covers, particularly those of the afterpeak and forepeak buoyancy compartments, were not securely fastened, with the result that the waves which swept over the deck of the barge filled these compartments and swamped her. The District Judge so found.

The appellant would have us reject this finding, accept the bargee's testimony that all the hatches were securely closed, and adopt the theory that enough water entered through the gooseneck vents of the cargo compartments to swamp the barge. But the District Court's finding is amply supported by evidence. Two divers testified to finding at least one of the forepeak hatches open when the barge was on the bottom. The afterpeak hatches were off when the vessel was raised, according to the testimony of the four surveyors who saw her emerge. Although from the photograph exhibit the port afterpeak hatch cover appears to be in place, only one dog is visible, and the cover may well have been loose. As to the cargo hatches, the divers say that some of these were loose when they tried them. It seems far more probable that the hatches had not been properly secured than that, if fast, the waves and water could have pried them loose without damaging or scarring any of the gear. The libelant's witnesses so testified, and the District Court believed them. Discussion must therefore start with the premise that at least some of the hatch covers of the peak compartments, without regard to the cargo compartments, were insecurely fastened when the vessel sank.

Even so, the appellant contends, there was no breach of warranty. It is undisputed that the barge was properly constructed and adequately equipped with gear for securely fastening her hatches. So any failure by her bargee to fasten them securely was a matter of negligent use of gear, not a breach of the covenant of seaworthiness, says the appellant, relying upon The Silvia, 171 U. S. 462, 19 S. Ct. 7, 43 L. Ed. 241; The Wildcroft, 201 U. S. 378, 26 S. Ct. 467, 50 L. Ed. 794; The Steel Navigator, 23 F.(2d) 590 (C. C. A. 2) and similar authorities.

The contract of affreightment carried an implied covenant of seaworthiness which has at least a double aspect, namely, that the

vessel shall be fit to receive cargo when loading begins, and shall be fit to sail at the time of sailing. See Carver, Carriage by Sea (2d Ed.) § 21 cited with approval in Bowring v. Thebaud, 56 F. 520, 522 (C. C. A. 2). This is conceded. The dispute is whether the Hasler was fit to receive cargo when loading began, and this depends not solely upon the actual condition of the hatch covers but involves the knowledge of the bargee as to their condition. Insecure ports or hatches which are believed to be secured so that nothing more is expected to be done about them, will render a vessel unseaworthy, although if their condition were known and inadvertently allowed to continue, the resulting damage would be caused by negligence of the crew not by unseaworthiness of the ship. International Nav. Co. v. Farr, 181 U. S. 218, 21 S. Ct. 591, 45 L. Ed. 830; The President Polk (C. C. A.) 43 F.(2d) 695; Compania General De Tabacos v. United States (C. C. A. 2) 49 F. (2d) 700, 701; The Manitoba, 104 F. 145, 156 (D. C. S. D. N. Y.). We have read the testimony of the bargee about his hatches, and it seems clear that he did not touch any of his four peak hatches after he had finished loading. He thought them secure "from the time before." While he repeatedly says that all the hatches were securely fastened, it appears that the ones on which he used a hammer were those over the cargo space (fol. 611); that the afterpeak hatches "were down from the time before" (fol. 609); "we always keep the big hatches down" (fol. 610); that he had fastened the peak hatches "before I began to load" (fol. 674). That the peak hatches had not in fact been adequately fastened has been found for reasons already stated. Nothing was done to them after loading. The bargee erroneously thought them already secured. With her peak hatches loose so that the buoyancy compartments would fill when waves swept over her, and this fact unknown to the man in charge of her, she was not seaworthy or "cargo-worthy," as Scrutton, L. J., has termed it in A. E. Reed & Co. v. Page, Son & East, Ltd., [1927] 1 K. B. 743, 755, when loading began. Hence we need not decide the mooted question whether in every warranty of seaworthiness there is an independent covenant of fitness to lie laden, applicable after loading is completed and before the voyage starts. For, if the loading stage continues until the ship breaks ground, the covenant of "cargoworthiness" must cover that whole period; certainly there can be no hiatus during which the owner is bound to nothing by his covenant.

Decree affirmed.