## GRUBNAN v. THE ONTARIO.

### (Circuit Court of Appeals, Second Circuit. April 15, 1902.)

### No. 138.

SHIPPING—INJURY TO CARGO FROM LEAKAGE—UNSEAWORTHINESS.

A finding affirmed that damage to cargo by water which leaked from one of the ship's ballast tanks, by reason of the breaking and straining of rivets during heavy weather, was due to excepted perils of the sea, and not to unseaworthiness of the ship at the beginning of the voyage.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 106 Fed. 324.

This cause comes here upon appeal from a decree of the district court, southern district of New York, dismissing the libel. The libel was filed to recover damages by water to 82 bales of wool carried by the steamship Ontario from London to New York. The damage was caused by a leak in a ballast tank upon which, properly dunnaged, the wool was stowed. The precise cause of the leak was the giving way of two rivets about eight inches apart on the top of the tank. Through the holes thus left the water found its way and, being somewhat obstructed by the planking on top of the tank and by the swelling of the boards which covered the limbers, accumulated sufficiently to swash up above the dunnage.

Lawrence Kneeland, for appellant.

J. Parker Kerlin, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

PER CURIAM. The opinion of the district judge sets forth the facts very fully, and exhaustively discusses the various questions which have been argued here. It seems unnecessary to rehearse the entire case. We concur in the conclusion that the vessel was not unseaworthy when she sailed. She encountered heavy weather, pitching and straining violently, and the circumstances indicate that under such pitch and strain these two rivets gave way. Other rivets in the vicinity, which did not give way, were yet so strained that they were found to be weeping, and the edge of the tank at the same place was somewhat distorted. There is no evidence to show that there was any defect in the rivets, such as was indicated in other cases cited in the opinion and in the briefs. We concur in the finding that:

"All the usual and ordinary means of making the ballast tank secure by overhauling and repairing the ship at proper intervals, and by testing the tank by frequent trials, and the ordinary tests, were applied shortly before the ship sailed on this voyage. Competent experts testify that these tests are all that are deemed necessary; and these tests showed that the tank was sound and tight."

The boards covering the limbers, although not water tight, were laid close together to prevent accumulation of obstructing substances in the limbers, which seems, from the evidence, to be proper construction. They were removed just before this voyage, overhauled, and found in proper condition. It is charged that the ceiling of the tank was laid flat without battens, so that any water which might

115 F.—49

escape from the tank could not find its way to the wings and limbers without running through and above such ceiling. But the proof as to absence of battens is not persuasive, and the water, after the first heavy weather, when apparently the rivets started, did find its way so quickly to the limbers that the engineers' department at once began using the pumps extra time to keep it down. The trouble was with the limber boards, which swelled, and therefore did not provide sufficient drainage for the flow from two broken and several weeping rivets, but the evidence does not warrant the holding that there was imperfect construction in the limber boards, and certainly shows that they were most carefully overhauled and replaced properly before sailing.

The decree is affirmed, with costs.