## THE NEWPORT.

### G. AMSINCK & CO., Inc., v. PACIFIC MAIL S. S. CO.

(District Court, N. D. California, S. D. February 4, 1925.)

No. 18057.

Shipping ⬤�ザ138—Liability for damage to cargo; error in navigation of vessel; "management of the vessel."

An engineer of a steamship, which was loaded and ready to sail, received an order to turn steam into the winches to handle the lines in casting off, but by mistake turned a smothering valve, which admitted steam into the hold, and damaged cargo therein. Held, that the act of turning steam into the winches was a part of the voyage, and that the error of the engineer was one "in the management of the vessel," for which she and her owner were exempted from liability by Harter Act, § 3 (Comp. St. § 8031).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Management.]

In Admiralty. Suit by G. Amsinck & Co., Inc., against the Pacific Mail Steamship Company and the American Steamer Newport. Decree for respondents.

Thacher & Wright, of San Francisco, Cal., for libelant.

McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for respondents.

PARTRIDGE, District Judge. Libelant shipped a quantity of coffee on the steamer Newport from Cristobal to San Francisco. The evidence shows that, when the ship was loaded, and ready to sail, the third engineer received orders to turn steam into the winches, in order to handle the lines in casting off. As he was about to do so he got the stand-by bell, and in his hurry turned on a valve which admitted steam into the hold, where the coffee was stowed. This was a "smothering" valve, intended to be used only in the event of a fire in the hold. This steam damaged the coffee, and it is admitted that the act of the engineer was negligence. The sole defense therefore is under the third section of the Harter Act (Comp. St. § 8031).

The Supreme Court, in International Navigation Co. v. Farr, 181 U. S. 218, 21 S. Ct. 591, 45 L. Ed. 830, has held that damage caused by water coming in a porthole negligently left open at the commencement of the voyage constitutes unseaworthiness under the first section of the act. Mr. Chief Justice Fuller points out that, "even if the loss occur through fault or error in management, the exemption cannot be availed of, unless the vessel was seaworthy when

she sailed, or due diligence to make her so had been exercised."

So it was held in The Manitoba (D. C.) 104 F. 145. In the former case, also, it is said "that fault in management is no defense when there is lack of due diligence before the vessel breaks ground." But a lack of due diligence in what? Clearly in putting her in a seaworthy condition for the voyage. But it seems to me that this case is fundamentally different in two particulars:

(1) The evidence shows that the act of admitting the steam to the winches was a part of the voyage, in that the winches were used to handle the lines in casting off.

(2) The compartments were in good condition, and were only rendered unfit by an error of the engineer in the management of the vessel.

In other words, opening the wrong cock in the act of casting off the lines is not alone different as to the time, thus making a clear distinction between this and the cases cited supra, but also in the essential nature of the act of negligence. It might well be said that a ship with her portholes open was not seaworthy at the commencement of the voyage, and, after all, that is the test of the distinction between the first and third sections of the act (sections 8029–8031). But to admit steam into the wrong line in the actual commencement of the voyage is quite as essentially an act of an officer in the management of the vessel.

The distinction between acts done in handling the ship and those in connection with the cargo is clearly pointed out by Sir John Gorell Barnes in The Glenochil, [1896] P. 10, where, speaking of the Harter Act, he says that. "If those sections are looked at, there will be found a strong and marked contrast in the provisions which deal with the care of the cargo, and those which deal with the management of the ship herself." Further, in discussing the act, Judge Gilbert, in Steamship Wellesley Co. v. C. A. Hooper & Co., 185 F. 733, 108 C. C. A. 71, says "that the voyage does not commence until the cargo is on board and the vessel ready to sail." The Glenochil is at least inferentially approved by the Supreme Court in The Germanic, 196 U. S. 589, 25 S. Ct. 317, 49 L. Ed. 610, where Mr. Justice Holmes says: "We see no reason to criticize this decision, and therefore lay on one side at once the fact that the vessel had come to the end of her voyage and was in dock."

I think, therefore, that the decree should be with the respondents; and it is so ordered.