**THE JOSEPH J. HOCK.**

No. 295.

Circuit Court of Appeals, Second Circuit.

April 2, 1934.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and F. Herbert Prem, both of New York City, of counsel), for appellant.

Foley & Martin, of New York City (James A. Martin and John R. Stewart, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The appellant chartered the barge Joseph J. Hock, to carry a cargo from Marcus Hook, Pa., to South Providence, R. I. The entire cargo carrying capacity of the barge was chartered, and barrels of chemicals were loaded thereon. The voyage was without incident except for some rolling due to swells. When the barge arrived at South Providence, it was placed by the appellant in a berth at a wharf. The bilges of the barge were sounded regularly throughout the voyage and the bilge water was at all times kept about normal. The bilges were pumped whenever the water reached 9 or 10 inches. There would have to be a depth of 22 inches before water could come in contact with the cargo. As the discharge progressed, it was discovered that the bottom tier of barrels had come in contact with water and their contents damaged. It was found that the depth of water in the forward part of the barge had been about 6 inches more than the after part. A survey found that the damage was sustained by reason of the lower ends of the barrels having come in contact with the water. The tops of the barrels were wet and stained, but this was due to rain which fell in Providence, and no claim is made therefor.

She was a wooden barge about 207 feet long, 34 feet beam, with a capacity of 2,240 tons. She was warranted as tight, staunch, and in every way fit for the voyage.

As discharging began at the after end, the barge was down at the bow. The soundings showed about 18 inches forward and 4 inches aft. The bargee, in preparing to pump, found the primer clogged with mud, and, knowing that the barge at the fall of the tide had grounded, attempted to clear the primer. There is evidence that the bargee stated that his barge leaked during the voyage and his pumps would not work. As a re-

sult the water from the bilges overflowed the ceiling of the barge. The master also stated to a witness that he had trouble with his pumps before arriving at Providence; that there was water in his vessel when he arrived and he could not get it out. Admissions made by the master are binding upon the vessel and its owner. The Potomac, 8 Wall. 590, 19 L. Ed. 511; The Lisbonense, 53 F. 293 (C. C. A. 2).

■ The appellant rested its case, however, largely upon the presumption of negligence arising under these circumstances. The appellee was a private carrier [The Oakley C. Curtis, 4 F.(2d) 979 (C. C. A. 2); The C. R. Sheffer, 249 F. 600 (C. C. A. 2)] and its liability is determined by the rules governing the responsibility of bailees (The C. R. Sheffer, supra). Upon proof of delivery to a bailee in good order and condition and delivery in bad order, there is a presumption of the bailee's negligence, and the latter must come forward and explain the cause of the damage and that it was not due to negligence on its part. The maritime cases support this rule. In re Steamship Co. Norden (D. C.) 6 F.(2d) 883. Delivery of the entire lower tier of barrels with water stains on the ends that had been resting on the ceiling, and the contents of these barrels wet and stained, called for explanation from the bailee who had "the greater opportunity * * * to explain the injury, due to the immediacy of his access to the barge and the bailor's absence." The White City, 48 F.(2d) 557, at page 558 (C. C. A. 2). No satisfactory explanation has been made, and there is unexplained sea water damage. It has been held that, unless some explanation is given by a carrier of the presence of water in its vessel, it is liable for the damages sustained. The Folmina, 212 U. S. 363, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748; Herman v. Compagnie, 242 F. 859 (C. C. A. 2).

■ The various defenses present no answer. The damage was not due to the failure of the shipper to furnish the customary amount of dunnage. Urging that the appellant assumed all risks of loading the cargo, the appellee refers to the charter party provision that the dunnage required for stowing the cargo was to be furnished by the charterers at their expense. While the barrels were stowed directly on the ship's ceiling, the evidence establishes that, when dunnage is necessary, it is customary to allow but one or two inches in thickness. To avoid contact with the water, it would have been necessary to use dunnage from six inches to one foot or more.

■ The clause in the charter party, "cargo to be shipped on the vessel's skin at shipper's risk," does not relieve the carrier from liability for damages due to water coming in contact as here proved. The finding of water in the barge to such a depth as to mark a definite water line on the sides of the barrels in the bottom tier as stated established that the damage could not have resulted from mere dampness arising from the bilges.

■ The claim that the appellant breached the charter party by placing the barge in a berth with insufficient water at the bow, whereby the pumps of the vessel became clogged and could not be used while the vessel was lying in the mud, was not established. When the barge was tied up at her wharf in Providence, her bow did not ground until late in the afternoon. In that time the cargo was being discharged from the after end of the barge, thus causing her stern to rise and her bow to sink lower and ground. She grounded forward because of the way she was discharged. The barge was discharged under the master's direction, and the master could at all times take soundings and examine the exact depth of the water under his vessel. He directed that the after hold be discharged first, and should have known that it would depress the bow. Reasonable care in making soundings would have made known to him whether or not the bow would remain afloat. She had lain in her berth for eight hours without difficulty. It was a safe berth. There is no evidence that water reached the cargo as a result of the barge grounding forward. If the damage was due to the negligent manner in which the discharge was effected, the barge is liable.

The charter incorporated the terms of the Harter Act, §§ 1–3 (46 U. S. C. §§ 190–192 [46 USCA §§ 190–192]). The master directed the discharge, and his negligence therein was not in relation to the management within the exceptions of section 3 of the Harter Act (46 USCA § 192), but was negligence in relation to the custody, care, and proper delivery of the cargo within sections 1 and 2 of the Harter Act (46 USCA §§ 190, 191). The Germanic, 196 U. S. 589, 25 S. Ct. 317, 49 L. Ed. 610; Knott v. Botany Mills, 179 U. S. 69, 21 S. Ct. 30, 45 L. Ed. 90; The G. R. Booth, 171 U. S. 450, 19 S. Ct. 9, 43 L. Ed. 234.

Decree reversed.