## RAVENSCROFT et al. v. UNITED STATES.*

### No. 205.

Circuit Court of Appeals, Second Circuit.

March 1, 1937.

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar and F. Herbert Prem, both of New York City, of counsel), for appellants.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (William E. Collins, Sp. Asst. Atty., of New York City, of counsel), for the United States.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

*Writ of certiorari denied 57 S.Ct. 940, 81 L.Ed. —

CHASE, Circuit Judge.

A prior action was brought by these libelants against the respondent in the Court of Claims which was tried before it was decided in Johnston et al. v. Fleet Corporation et al., 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, that the exclusive remedy was under the Suits in Admiralty Act (46 U. S.C.A. § 741 et seq.). That suit was dismissed (71 Ct.Cl. 766) for want of jurisdiction though the dismissal was also put on the merits, and the present action was begun pursuant to the provisions of the Suits in Admiralty Act as amended (46 U.S.C.A. § 745).

On December 31, 1919, the respondent's steamship West Imboden sailed from Galveston, Tex., bound for Liverpool via Norfolk with a cargo including cotton with which we are alone now concerned. That cotton was shipped in good order and condition and turned out at Liverpool damaged. She was a common carrier and the cotton was shipped under bills of lading which incorporated the provisions of the Harter Act (46 U.S.C.A. §§ 190–195). The essential facts have been stipulated to show that the libelants are the proper parties to sue, and there is no issue except the liability of the defendant on the merits providing failure to file a claim for damages does not bar the action.

Due diligence was exercised to make the ship seaworthy in all respects when she broke ground at Galveston and the cargo was all properly stowed. She proceeded to Norfolk and from there sailed for Liverpool without serious mishap, although a fire, quickly extinguished, occurred at Norfolk. On January 14, 1920, she ran into extremely rough weather which included gales until the 26th. On the 24th she lost a propeller blade. The weather was worse on the 27th when a hurricane broke with such force that the ship was unable to steer and had to stop. Her superstructure and boats were considerably damaged during the heavy weather. Early in the afternoon of the 27th it was discovered that the deck above the No. 2 hold, where the cotton involved in this suit was stowed, was so hot that water bubbled when it struck that part. There was in this hold some spelter stowed in the 'tween decks on top of the cotton, and one of the fuel tanks of the ship, an oil burner, was located near the hold separated from it by a bulkhead. The captain thought that the cotton was afire, and under his orders, without opening the hold or making

any other investigation, steam was promptly injected into the hold through the smothering lines. Water was also poured in through hoses down the ventilator openings, through a hole made in the hatch cover and through one drilled in the heated part of the deck. Meanwhile a distress signal was sent out and the lifeboats made ready for lowering despite the heavy seas. By 6 p. m. the deck had cooled so much that the distress signal was canceled. The ship went on to Liverpool, keeping steam and water on the cotton, arriving there on January 30th. She engaged a representative of the Liverpool Salvage Association to inspect her and on his advice continued to wet the cotton as a precaution against the spread of fire. During the time fire was suspected to be smoldering in the cotton the ship was not permitted to dock and remained in the Mersey for some days until the port authorities allowed her to go into an open berth. There her other holds were discharged and then No. 2 hold was opened for the first time. When this was done it was learned that there had been no fire at all but that a steam pipe had been broken by the working of the ship in the heavy seas allowing steam to escape to heat the deck. She was then moved to a closed berth where the cotton was discharged considerably damaged by the wetting.

Before the ship began to discharge, general average cash deposits or security were required and all cargo owners complied. Later these were all returned. The libelants filed no notice of claim as provided in the bills of lading but excused their failure to the satisfaction of the trial court on the ground that they were misled by the fact that general average security was required by the ship. We find it unnecessary to consider this defense in view of another which we believe requires affirmance of the decree in any event.

As much should be said of the action of the trial judge in exonerating the captain from fault in wetting the cotton at sea without in any way first inspecting the hold. It was considered that in view of his knowledge of the occurrence of a fire in the ship at Norfolk, the proximity of the fuel tank, and the danger of admitting air to a smoldering fire in cotton, the captain was justified in taking prompt measures to extinguish or control the supposed fire without first running the risk incident to an investigation adequate to disclose whether or not a fire actually existed. While we are not inclined to disagree with the conclusion of the judge, we will assume, without so deciding, that the captain did act too hastily and so was negligent in causing steam and water to be let into the hold as he did and in continuing to do that thereafter both before and after the ship reached Liverpool. Even so, the respondent is relieved from liability for the damage done to the cotton by the provisions of section 3 of the Harter Act (46 U.S.C.A. § 192) provided his fault, if fault it was, primarily concerned the navigation or management of the vessel and not the care of the cargo. Section 1 of the Harter Act (46 U.S.C.A. § 190) dealing with the last-mentioned subject would not, of course, relieve the respondent from liability.

It is fairly certain that this captain, already confronted with dangerous seas which had caused one propeller blade to break off and had for a time made steering impossible, was primarily concerned in fact with the saving of his ship when in the midst of his other reasons for alarm for its safety he was made aware of the hot deck which might well have been due to fire in the cotton in the hold. It may have been that his object in wetting the cotton was also in part to minimize the damage to that, but it would be unreasonable to believe under the conditions which he thought existed that the captain was actuated by considerations of cargo care except to a negligible degree. We have no hesitation in concluding that the cotton was wet and damaged primarily in an effort to save the ship from what seemed to be impending disaster from fire. That the fire was nonexistent does not change the object of the wetting of the cotton. That was done primarily as a part of the management of the ship though in fact it was ineffective for that purpose because there was no fire to put out. This fact, however, but brings us back to the question of fault or no fault. Had there been a fire, what the captain did to wet the cotton would plainly have been necessary and consequently no fault. It would have been done primarily in management of the ship and done faultlessly because done necessarily. Because there was in fact no fire the captain may have been at fault in wetting the cotton, but, if so, that fault lay in an act primarily done in managing the ship nevertheless. It was a fault only in that a prudent captain under like circumstances, it may be assumed, would not have so managed his ship. Even so, it is of no

420

consequence that it was a fault for that is exactly what the third section of the Harter Act (46 U.S.C.A. § 192) covers provided the object of the act was primarily ship management or navigation. As that was the kind of act which caused the damage to the cotton, fire or no fire, there can be no recovery for the wetting at sea. The Silvia, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241; The Ulenochil, VIII Asp. Mar. Cas. 218; The Milwaukee Bridge (C.C.A.) 26 F.(2d) 327; The Newport News (D.C.) 199 F. 968; Jay Wai Nun v. Anglo-American Oil Co. (C.C. A.) 202 F. 822. See, also, Oceanic Steam Nav. Co. v. Aitken (The Germanic), 196 U. S. 589, 25 S.Ct. 317, 49 L.Ed. 610.

It is urged that even if the damage caused at sea is not recoverable, that is not so as to damage due to additional wetting after the ship reached Liverpool. The trial judge found that damage to be inconsequential, but, however the fact may be, what was done at Liverpool was required as a part of the management of the ship as a prerequisite to securing permission to dock. The third section of the Harter Act (46 U.S.C.A. § 192) applied to ship management there also. The Germanic, supra; The Wildcroft, 201 U.S. 378, 26 S.Ct. 467, 50 L.Ed. 794.

Decree affirmed.