**LEON BERNSTEIN COMPANY,**
Appellant,

v.

**Wilhelm WILHELMSEN,** Appellee.

No. 15829.

United States Court of Appeals
Fifth Circuit.

April 19, 1956.

Malcolm W. Monroe, New Orleans, La., Deutsch, Kerrigan & Stiles, René H. Himel, Jr., New Orleans, La., of counsel, for appellant.

Alfred W. Farrell, Jr., New Orleans, La., Terriberry, Young, Rault & Carroll, New Orleans, La., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

BROWN, Circuit Judge.

After departure from the Port of Manila, P. I., on her voyage from Charleston, South Carolina, to the Far East, the Titania encountered freshening weather and began to roll and pitch. As this was in the typhoon season (September) and heavy weather was anticipated on the leg to Hong Kong, it was decided to fill empty deep tanks with sea water ballast for better trim.

Cargo was damaged when sea water overflowed the open manhole in the top of a deep tank located in the same hold as the cargo. The manhole cover had been removed to enable the Mate to determine when the tank was full, although, of course, sounding pipes were available and could have been used. The vessel concedes that the Mate was negligent in not having closed down the intake before the tank overflowed causing the cargo damage involved here.

While there are some peripheral charges faintly injecting suggestions of some antecedent unseaworthiness and which have neither findings nor evidence in the record for support, the only thing which might differentiate this from the classic case that negligence in the trimming, the pumping and handlng of ballast [1] at sea is an excusable "Act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the naviga-

---

[1] The Steel Navigator, 2 Cir., 23 F.2d 590, 1928 AMC 388; American Sugar Refining Co. v. Rickinson Sons & Co., 2 Cir., 124 F. 188. Similarly, sounding and pumping bilges are acts of management, see, The Merida, 2 Cir., 107 F. 146; The British King, D.C.S.D.N.Y., 89 F. 872, affirmed 2 Cir., 92 F. 1018; The Ontario, D.C.S.D.N.Y., 106 F. 324, affirmed Grubnan v. The Ontario, 2 Cir., 115 F. 769; Sandfield, D.C.S.D.N.Y., 79 F. 371, affirmed 2 Cir., 92 F. 663; as

tion or in the management of the ship", Carriage of Goods by Sea Act, 46 U.S. C.A. §§ 1301, 1304(2) (a), is an isolated piece of testimony of the Mate.

Upon written cross interrogatories, the Mate had several times stated that the manhole covers were removed to permit visual watching of the water level to make certain that the tanks did not overflow. This then transpired:

"Q. Is it not a fact that the manhole covers were removed to make certain that the tank would not overflow and that this action was taken primarily to protect the cargo stowed in the No. 3 shelter deck from being wetted? A. Yes, it is a fact."

With commendable resourcefulness and recognized ingenuity by able counsel, the question was neatly framed to match the rubric of The Germanic, 196 U.S. 589, 598, 25 S.Ct. 317, 49 L.Ed. 610, 614. But the trial court was unwilling to have this fact-law question of American Law foreclosed by a foreign seaman through such device. And so are we.

When Justice Holmes (The Germanic, supra) capsulated the test with his characteristic pungent brevity—"* * * the question which section [of the Harter Act] is to govern must be determined by the primary nature and object of the acts which cause the loss * * *,"—it seems evident that he neither intended, nor have courts so understood, that the standard was to be artificially applied by playing on or with words.

Of course, as a last link in the chain of causation, the damage here came about because the manhole cover was off. But the sea water would not have been in the deep tank had not it been determined that the ship should be ballasted to trim her for expected heavy weather. That was the real and underlying cause of the damage. And without a doubt, that act of ballasting to trim had as its main and principal aim the general care and safety of the whole vessel to protect ship, crew, cargo and freight as she plowed ahead into the area of typhoons.

This was not done for the preservation of the cargo in that particular hold or to alter or eliminate conditions likely to cause or permit damage to that cargo. And, since the Mate in this specific testimony limited it to cargo in No. 3 hold, neither was it the case of handling or protecting other cargo as is The Germanic, supra.

The statute does exculpate the carrier for cargo damage caused by acts in navigation and management of the vessel, but the expectation of ultimate escape ought not to penalize a vessel for an effort toward prudent execution of such acts. And yet that would be the consequence here if, in carrying out the navigational acts of ballasting, the master thought cargo would best be protected against danger from possible damage by doing it one way rather than the other, but the vessel is held liable because the reason for the chosen course is stated in terms of protecting cargo.

A vessel in torrential seas may have to alter course to save herself. If she attempts it one way, she may sustain heavy damage to her hatches and ventilators with likely loss or harm to cargo, while if she does it differently all should go well. The prudent course is obviously undertaken to prevent injury to the

is opening sea cocks to fill water tanks, The Wildcroft, 201 U.S. 378, 26 S.Ct. 467, 50 L.Ed. 794.

Because the question so frequently turns on factual detail, the significant variables which put cases on one side of the line or the other under either C.O.G.S.A. or its forerunner, The Harter Act, 46 U.S.C.A. § 190, are illustrated in the convenient listing of many of the cases found in Kanuth, The American Law of Ocean Bills of Lading, 4th Ed. 1953, pages 196 to 206, especially 201, which discusses the distinction between errors of navigation and management, 46 U.S.C.A. § 1304(2) (a), as opposed to negligence in the carrier's duty to "properly and carefuly load, handle, stow, carry, keep, care for, and discharge the goods carried", 46 U.S.C.A. § 1303(2); also the Text Note pages 365–367, Cases & Materials on Admiralty, Morrison & Stumberg, 1954; and Sprague and Healy on Admiralty, 1950, page 339, footnote 8.

cargo. But the nature of the act in preserving the whole venture is not altered by the verbal explanations given then or later concerning why the navigational-management act was executed in one way rather than another.

The events leading up to the damage are undisputed. The purpose of ballasting is likewise uncontradicted. There is neither doubt nor uncertainty as to the facts, C. J. Dick Towing Company v. The Leo, 5 Cir., 202 F.2d 850, 1951 AMC 1539; McAllister v. United States, 348 U.S. 19, 76 S.Ct. 6, 99 L.Ed. 20, 1954 AMC 1999; Challenger, Inc., v. Durno, 5 Cir., 227 F.2d 918, 1956 AMC 111, and the legal conclusion is impelled that this negligence was an act in the navigation or management of the vessel, The Silvia, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241. The decision of the District Court exonerating the carrier was right. It is affirmed.