OPINION AND ORDER
RUSSELL E. SMITH, District Judge.
William Stoianoff, d/b/a “The Joint Effort,” seeks to declare the Montana Paraphernalia Act (1981 Mont.Laws, ch. 481) unconstitutional and to enjoin its enforcement.
The Montana Legislature enacted without substantial change the provisions of a so-called “model act,” which was designed by the Federal Drug Enforcement Administration to overcome what some courts considered to be constitutional infirmities in other acts. The purpose of the drug paraphernalia acts is to put out of business those commercial establishments, known in the vernacular as “head shops,” catering to the mechanical needs and desires of drug users. The right of society to control such use is not questioned. Section 4 of the Act provides:
It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver drug paraphernalia, knowing or under circumstances where one reasonably should know that it will be used [for drug-related purposes].
(Emphasis supplied.)
Section 1 of the Act states:
[T]he term “drug paraphernalia” means all equipment, products, and materials of any kind that are used, intended for use, or designed for use [for drug-related purposes].
It contains a nonexclusive list of twelve types of drug paraphernalia. Some of these, chosen at random, are:[1]
Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant that is a dangerous drug;
Dilutents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose, and lactose, used, intended for use, or designed for use in cutting dangerous drugs;
Blenders, bowls, containers, spoons, and mixing devices used, intended for use, or designed for use in compounding dangerous drugs;
Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, or other dangerous drug as defined by 50-32-101 into the human body, such as:
smoking and carburetion masks; roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;
chamber pipes.
Most, if not all, of the items which are listed in the statute could be used for purposes which are not connected with drug business or drug use.
The Act in Section 2 lists thirteen factors, in addition to all relevant factors, which can be considered in determining whether an *1194 article is “drug paraphernalia.” Some of the considerations, chosen at random, are:[2]
Statements by an owner or by anyone in control of the object concerning its use;
The proximity of the object to dangerous drugs;
Instructions, oral or written, provided with the object concerning its use;
Direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;
The existence and scope of legitimate uses for the object in the community.
All of these factors would be relevant to a determination of the intent of the possessor.
Here, as in the other cases involving drug paraphernalia, the Act is attacked on the ground that it is vague and overbroad, and here, as in the other cases, the attack is facial; that is, the courts are asked to determine whether the Act is on its face vague so that hypothetical persons would not know what is forbidden. This difficulty is compounded by the fact that many, if not most, of the things that could be considered to be drug paraphernalia are commonly used for legitimate purposes, and even the few items which are highly suggestive of drug use could be found to have legitimate uses. Under these circumstances the courts have come to varying conclusions.
In Record Revolution No. 6, Inc. v. City of Parma, 638 F.2d 916 (6th Cir. 1980), vacated and remanded, 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981), the Court of Appeals found the act to be impermissibly vague. In Casbah, Inc. v. Thone, 651 F.2d 551 (8th Cir. 1981), cert. docketed, 50 U.S.L.W. 3157 (Sept. 15, 1981), the Court of Appeals reached a contrary conclusion. In Hejira Corp. v. MacFarlane, 660 F.2d 1356 (10th Cir. 1981), the Court of Appeals found a Colorado act, similar to the model act, constitutional, but it laid substantial emphasis on the fact that the definitions in the Colorado act were different from those in the model act. In the Colorado act the definition of “drug paraphernalia,” uses the words “primarily adapted, designed and intended” for drug use. The Montana Act uses the words “used, intended for use or designed for use.” I believe that those courts holding the act to be vague have used a first amendment standard of vagueness rather than the commercial regulatory standard and that all courts which have found it necessary to painstakingly analyze each word in the statute have failed to give full effect to the requirement in the model act that intent be proved. Emphasis on precision of definition was proper in some of the earlier cases which made possession without intent to sell for drug use unlawful.[3] In my opinion, if full effect is given to the intent requirement and if the proper standard is applied, such word-by-word analysis is not required.
As to. the standard to be applied, there is no question that a law must give notice to a person of ordinary intelligence what is forbidden and what is not. But the standard to be applied to an act regulating commercial activities is different from that to be applied where the First Amendment is involved. In United States v. National Dairy Products Corp., 372 U.S. 29, 36, 83 S.Ct. 594, 599, 9 L.Ed.2d 561 (1963), it was said:
In this connection we also note that the approach to “vagueness” governing a case like this is different from that followed in cases arising under the First Amendment. There we are concerned with the vagueness of the statute “on its face” because such vagueness may in itself deter constitutionally protected and socially desirable conduct. See Thornhill v. Alabama, 310 U.S. 88, 98 [60 S.Ct. 736, 742, 84 L.Ed. 1093] (1940); NAACP v. Button, 371 U.S. 415 [83 S.Ct. 328, 9 L.Ed.2d 405]. No such factor is present here where the statute is directed only at conduct designed to destroy competition, *1195 activity which is neither constitutionally protected nor socially desirable.
It hardly could be said that the sale of paraphernalia to the drug trade is either constitutionally protected or socially desirable. In Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952), speaking again of a regulatory statute, the Court said:
But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.
(Footnote omitted.) Again, in United States v. Petrillo, 332 U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947), the Court said:
We think that the language Congress used provides an adequate warning as to what conduct falls under its ban, and marks boundaries sufficiently distinct for judges and juries fairly to administer the law in accordance with the will of Congress. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.
The Act says in no uncertain terms that a person may not sell drug paraphernalia with the intent that it be used for drug purposes. The Act in my opinion goes farther than do most laws in assisting a reader to know what the guidelines are. Thus, that portion of the Act which specifically lists things that may be intended for use with drugs points out to the reader where the danger lies. That part of the Act specifically listing the criteria for determining what is drug paraphernalia might more properly have been written in terms of intent because all of the considerations there expressed would be relevant in the determination of intent, but in any event the whole section tells the reader what to look for.
Certainly the definition of “drug paraphernalia” is not precise. It could not be. Certainly the legislature introduced some ambiguity[4] into the law when it failed to state whose design it had in mind in the definition of “drug paraphernalia.” But in the final analysis any lack of precision in statutory definition becomes relatively unimportant since under the Act no item is drug paraphernalia per se. A crime is committed only when the possessor intends to sell an article, however designed, for drug purposes. If some third person designed an article for drug use, the intent of that person would be, at most, an element which could be considered by a jury as bearing on a defendant’s intent. Under this statute, a conviction does not stand or fall on any definition of drug paraphernalia. All of the criteria suggested in Section 2 of the Act are relevant to prove intent — and the lack of it as well. In any case involving intent it is the totality of conduct which must be considered.[5] Thus a “roach” by dictionary definition is “the butt of a marijuana cigarette.” It follows that a roach clip is the clip for holding that butt. Perhaps it could be shown that some thrifty pot-smoker designed the “roach clip” for drug use. Were a quantity of roach clips found in the establishment of a manufacturer of decorative items and used by him to hold feathers together, and were those decorative items sold to a retailer dealing in such items, it would be difficult, despite the definition and the design, to find an intent. The situation might be different if the person involved were doing business as “The Joint Effort,” “Pot Luck I,” “Euphoria,” “Pipe *1196 Dream, Inc.,” “Nation’s Head,” “Smile High,” or “Makin’ Magic”;[6] were not manufacturing decorative items; and were selling a large number of the other items listed in Section 2 of the Act in some disproportion to the gross sales of the business.
The Act is not in my opinion impermissibly vague. A person reading it would know that he could not sell any item intending that it be used for drug purposes. What he would not know is at what point the totality of his conduct would be considered by a jury to reveal the requisite intent.[7]
An act is not unconstitutionally vague simply because a person reading it might not know exactly how a jury might decide an intent question. The Act here in question is a model of clarity when compared with the Sherman Act (15 U.S.C. § 1 et seq.), and as to that act, Mr. Justice Holmes, speaking for the majority as to the challenge of vagueness said:
The objection to the criminal operation of the statute is thought to be warranted by The Standard Oil Co. v. United States, 221 U.S. 1 [31 S.Ct. 502, 55 L.Ed. 619], and United States v. American Tobacco Co., 221 U.S. 106 [31 S.Ct. 632, 55 L.Ed. 663]. Those cases may be taken to have established that only such contracts and combinations are within the act as, by reason of intent or the inherent nature of the contemplated acts, prejudice the public interests by unduly restricting competition or unduly obstructing the course of trade. 221 U.S. 179. And thereupon it is said that the crime thus defined by the statute contains in its definition an element of degree as to which estimates may differ, with the result that a man might find himself in prison because his honest judgment did not anticipate that of a jury of less competent men. The kindred proposition that ‘the criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty,’ is cited from the late Mr. Justice Brewer sitting in the Circuit Court. Tozer v. United States, 52 Fed. Rep. 917, 919.
But apart from the common law as to restraint of trade thus taken up by the statute the law is full of instances where a man’s fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. “An act causing death may be murder, manslaughter, or misadventure according to the degree of danger attending it” by common experience in the circumstances known to the actor. “The very meaning of the fiction of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw.” Commonwealth v. Pierce, 138 Massachusetts, 165, 178. Commonwealth v. Chance, 174 Massachusetts, 245, 252, 54 N.E. 551. “The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.” 1 East P.C. 262. If a man should kill another by driving an automobile furiously into a crowd he might be convicted of murder however little he expected the result. See Reg. v. Desmond, and other illustrations in Stephen, Dig.Crim. Law, art. 223,1st ed., p. 146. If he did no more than drive negligently through a street he might get off with manslaughter or less. Reg. v. Swindall, 2 C. & K. 230; Rex v. Burton, 1 Strange, 481. And in the last case he might be held although he himself thought that he was acting as a prudent man should. See The Germanic, 196 U.S. 589, 596 [25 S.Ct. 317, 318, 49 L.Ed. 610]. But without further argument, the case is very nearly disposed of by Waters-Pierce Oil Co. v. Texas (No. 1), 212 U.S. 86, 109, where Mr. Justice Brewer’s decision and other similar ones were *1197 cited in vain. We are of opinion that there is no constitutional difficulty in the way of enforcing the criminal part of the act.
Nash v. United States, 229 U.S. 373, 376-78, 33 S.Ct. 780, 781-82, 57 L.Ed. 1232 (1913). This language still states the law.[8]
The model act has been found both overbroad [9] and vague because of the words “reasonably should know.” Record Revolution No. 6, Inc. v. City of Parma, 638 F.2d 916, 935 (6th Cir. 1980), vacated and remanded, 101 S.Ct. 998 (1981). These words do no more than require a defendant to know what a reasonable person would know. I see nothing vague about them. The law is overbroad only if a legislature has no power to punish an individual who, because of ignorance, real or feigned, fails to know what a reasonable person would know. In this realm of intent, since what a man knows is largely determined by the totality of his conduct judged in the light of the circumstances under which he acts, it is probable that, as a practical matter, he always is held to know what he should know. There may be some theoretical difference between being held to a standard of “knowing” and being held to a “reasonably-should-know” standard, but even so the legislature may constitutionally use the “reasonable person” standard. Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913). As indicated by the above quotation from Nash, the Supreme Court many years ago buried the idea that criminality may not depend upon what a jury thinks is reasonable. See Casbah, Inc. v. Thone, 651 F.2d 551, 561 (8th Cir. 1981), cert. docketed, 50 U.S.L.W. 3157 (Sept. 15, 1981), and cases cited therein.
Section 6 of the Act is attacked on various grounds. It reads in part:
It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing or under circumstances where one reasonably should know that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia.
In my opinion, Section 6 is different from Section 4 with respect to the intent element. Thus, under Section 6 of the Act any person who advertises an item which could be used, either for drug-connected or non-drug-connected purposes, could be in jeopardy regardless of his own intent. If he placed an ad knowing that it would promote the sale of bowls, he could be convicted if it were determined that the bowls were designed or intended by some person other than himself to be used for drug purposes. I think this section is unconstitutionally vague for the reasons given by the court in Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates, 639 F.2d 373 (7th Cir. 1981), prob. juris, noted,-U.S. -, 101 S.Ct. 3028, 69 L.Ed.2d 404 (June 2, 1981), which considered an act other than the model act.
The remainder of the Act is not affected.
The Montana Supreme Court, in State ex rel. Evans v. Fire Department Relief Association, 138 Mont. 172, 178, 355 P.2d 670, 673 (1960), has stated: “ ‘It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another part and that if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken ....’” See also United States v. *1198 Jackson, 390 U.S. 570, 585, 88 S.Ct. 1209, 1218, 20 L.Ed.2d 138 (1968); Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1932); 16 Am.Jur.2d Constitutional Law § 260 (1979). The question of severability is a question of state law which, though not obliged to, a federal court may determine. Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038 (1932); Dorchy v. Kansas, 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686 (1924). This Act contains a severance clause which “provides a rule of construction which may sometimes aid in determining [the legislative] intent.” 264 U.S. at 290, 44 S.Ct. at 325. The Montana Supreme Court has stated the rule in Montana as follows:
“A statute solemnly enacted is not to be overthrown by anything short of positive conviction of its illegality, and it is not destroyed in toto because of an improper provision, unless such provision is necessary to the integrity of the statute or was the inducement of its enactment.”
State ex rel. Evans v. Fire Department Relief Association, 138 Mont. 172, 178, 355 P.2d 670, 673, quoting Hill v. Rae, 52 Mont. 378, 158 P. 826 (1916). See also Montana Automobile Association v. Greely, Mont., 632 P.2d 300 (1981). Section 6 does add a prohibition, and its deletion may diminish in some degree the effectiveness of the Act,[10] but Section 6 is not entwined with the rest of the Act and does not destroy the integrity of the Act. The purpose of the statute was to control the sale of drug paraphernalia, and Section 6 was but one of several sections designed to limit such sales. It is difficult to believe that the legislature would not have passed the Act absent Section 6.
It is urged that the Act creates permissive inferences where in Section 2 it lists certain factors which may be considered in determining what drug paraphernalia is. I think not. The Act would permit introduction of evidence of the circumstances described in Section 2. The section does not express the weight to be given to the evidence. It is for the jury to infer what it will from the evidence. The considerations mentioned in the Act are relevant to the question of intent. Reliance by plaintiff upon County Court v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), is misplaced. There the Court said that, even where a state creates a permissive presumption, such would not make the act facially unconstitutional. To the extent that the cases of General Stores, Inc. v. City of Albuquerque, No. 81-0027-M (D.N.M., filed March 23, 1981), Weiler v. Carpenter, 507 F.Supp. 837 (D.N.M.1981); and Lazy J., Ltd. v. Borough of State College, No. 80-1167 (M.D.Pa., filed Jan. 30, 1981), are contrary, I disagree with them.
I hold, therefore:
Section 6 of the Act is unconstitutional and should be severed from the remainder of the Act. The balance of the Act is constitutional, and the state may enforce it.
The clerk will enter judgment accordingly-

. 1981 Mont.Laws, ch. 481, Section 1(c), (f), (h), (k)(iv), (v), and (vii).

. 1981 Mont.Laws, ch. 481, Section 2(1), (4), (7), (12), and (13).

. See Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates, 639 F.2d 373 (7th Cir. 1981), prob. juris, noted, 452 U.S. 904, 101 S.Ct. 3028, 69 L.Ed.2d 404 (1981).

. At least different courts have found differing meanings. See the elaborate decision in Hejira Corp. v. MacFarlane, 660 F.2d 1356 (10th Cir. 1981).

. See Devitt & Blackmar, Federal Jury Practice & Instructions § 14.13 (3d ed. 1977).

. These are names of the litigants in some of the drug paraphernalia cases.

. It appears to me that some courts have equated the question of precision of definition with the problem of intent.

. United States v. United States Gypsum Co., 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978) (Sherman Act price-fixing); United States v. Powell, 423 U.S. 87, 93, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975) (firearms violation); United States v. General Motors Corp., 565 F.2d 754, 761 (D.C.Cir. 1977) (refusal to pay an administrative penalty); Rath Packing Co. v. Becker, 530 F.2d 1295, 1310 (9th Cir. 1976), aff'd, 430 U.S. 519, 97 S.Ct. 1597, 51 L.Ed.2d 803 (1977) (meat packing regulations); United States v. Villano, 529 F.2d 1046, 1055 (10th Cir.), cert. denied, 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1193 (1976) (use of interstate facilities for gambling).

. I think it doubtful that the overbreadth doctrine is applicable in this case. See Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).

. That the advertising section is stricken does not in any way prevent a defendant’s advertising from being used as proof of an element of intent. Section 2(9).